UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES ACHIEVEMENT ACADEMY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5:04-135-JMH |
| v. | ) ) | |
| PITNEY BOWES, INC., *et al.*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) ) | |

**            **            **            **            **

This matter is before the Court on the summary judgment motions of Defendant Imagistics International Inc. ("Imagistics") [Record No. 71] and Defendants Pitney Bowes, Inc. ("PBI") and Pitney Bowes Credit Corporation ("PBCC") [Record No. 72]. Plaintiff United States Achievement Academy, LLC ("USAA") has responded to both motions [Record Nos. 79 & 80, respectively], to which Imagistics [Record No. 107], PBI and PBCC replied [Record No. 105]. Fully briefed, and the Court being duly advised, this matter is ripe for decision.

**BACKGROUND**

USAA publishes high school and college yearbooks. It solicits students to appear in and purchase its yearbooks by sending out various promotional materials. Before 2002, USAA had hired an outside company to print these materials. Between September 2001 and January 2002, USAA met with Larry Stokely, a PBI employee, and representatives of Imagistics to discuss USAA's purchase of a

printing and mailing system to produce these promotional materials in-house.  USAA decided to purchase such a system (the "Pitney Bowes System"), and on February 12, 2002, it signed (1) an equipment lease covering the entire Pitney Bowes System, with PBCC as lessor and PBI as supplier of the equipment and software (the "Original Lease") and (2) a "Pitney Bowes Copier Maintenance and Supplies Plan Agreement."[1]  USAA also signed a contract titled "Statement of Work for Integration" (the "Integration Agreement") in which PBI agreed to install the leased equipment and software.

Almost three months later, PBCC decided not to finance the lease of the printers.  Thus, on May 6, 2002, the parties to the Original Lease destroyed it and entered into two separate leases: (1) an equipment lease covering the Pitney Bowes mailing and sorting equipment and software, with PBCC as the lessor and PBI as the supplier (the "Software Lease") and (2) a lease agreement covering two copier/printers and related equipment, with CIT Technology Services, Inc. ("CIT") as the lessor and Imagistics as the supplier (the "Printing System Lease").

USAA experienced problems with the software supplied by PBI and the printers supplied by Imagistics.  The software had to be reprogrammed to handle USAA's print jobs.  The reprogramming resulted in what USAA complains was a time-consuming, labor-

---

[1] In its motion for summary judgment, Imagistics refers to this document as the "Equipment Maintenance Agreement."

intensive process.  USAA claims that the printers were not designed to handle its volume and type of print jobs and had to be serviced frequently.  In its complaint, USAA alleges that the system totally failed to meet its printing and mailing requirements.  In June 2003, USAA replaced the Pitney Bowes System with a system acquired from another company.  USAA filed this lawsuit against CIT, Imagistics, PBI, and PBCC on March 24, 2004.  Its claims against CIT were dismissed on July 23, 2004.  USAA brings the following claims against Imagistics, PBI, and PBCC: (1) fraud, (2) revocation of acceptance, (3) breach of warranty, (4) negligent misrepresentation, and (5) breach of contract.  In its complaint, USAA also charges PBI with breach of duty of good faith and fair dealing.  USAA, PBI, and PBCC agreed that their lease would be considered a finance lease governed by Article 2A of the Uniform Commercial Code ("U.C.C.").  In the lease between USAA, Imagistics, and CIT, the parties agreed that if Article 2A applies to the lease, the lease will be considered a finance lease.

PBCC, PBI, and Imagistics have moved the Court for summary judgment on all claims against them.  Both PBCC and Imagistics have brought counterclaims against USAA.  PBCC claims that USAA is liable for defaulting on their lease agreement.  Imagistics alleges that USAA is liable for breaching the Equipment Maintenance Agreement.

## STANDARD OF REVIEW

Defendants have moved the Court pursuant to Federal Rule of Civil Procedure 56(c) to grant summary judgment in their favor. "Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 797 (6th Cir. 2005) (citing Fed. R. Civ. P. 56(c)). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. A fact is material if its resolution will affect the outcome of the lawsuit. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001); *see Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) ("If, under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment."). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When determining the merits of a summary judgment motion, "the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Landham v. Lewis Galoob Toys*, *Inc.*, 227 F.3d 619, 622 (6th Cir. 2000); *see Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The Court must not weigh the evidence, but must decide whether there are genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Although the disputed issue need not be "resolved conclusively in favor of the non-moving party," USAA, as the non-moving party in this case, "must present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citation omitted).

**ANALYSIS**

**I.   Claims Brought Against PBI, PBCC, and Imagistics**

**A.   Fraud and Negligent Misrepresentation Claims Against PBCC, PBI, and Imagistics Based on Larry Stokely's Statements**

USAA contends that PBI, PBCC, and Imagistics, through their

5

agent, Larry Stokely, made the following material misrepresentations to it regarding the Pitney Bowes System:

> (a) The laser printing process on the Pitney Bowes printer/copiers was a simple "three buttons to run" procedure;
> (b) The Pitney Bowes System would produce a "savings per year" of $279,152.70;
> (c) The Printing System would "handle up to a million pages a month" with "unmatched reliability, high productivity and economic cost savings";
> (d) The Pitney Bowes System would meet or exceed USAA's requirements for printing and mailing, including specific representations that the recommended printing and copying equipment would perform as required to meet USAA's needs.

(Second Am. Compl. ¶ 21.)

In this case, which was brought pursuant to the Court's diversity jurisdiction, the Court applies Kentucky law. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). To set forth a fraud claim under Kentucky law, USAA must prove the following elements: (a) a material misrepresentation; (b) which was false; (c) which was known to be false or made recklessly; (d) which was made with inducement to be acted upon; (e) which USAA acted in reliance upon; and (f) which caused USAA injury. *See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003). A party asserting fraud has the burden of establishing these elements by clear and convincing evidence. *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978). "Actionable misrepresentation must relate to a past or present material fact which is likely to affect the conduct of a reasonable man and be an inducement of the contract. A mere

6

statement of opinion or prediction may not be the basis of an action." *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955). This general rule is subject to an exception: "[P]romises made without intention of fulfillment in order to induce another to enter into a contract may be as culpable and harmful as misrepresentations of existing facts." *Schroerlucke v. Hall*, 249 S.W.2d 130, 131 (Ky. 1952). In *Schroerlucke*, the court explained that in that instance, "we have representations based partly on existing facts and partly on promises in futurity which induced appellant to enter into a contract whereby appellee acquired an unconscionable and inequitable advantage." *Id.* at 132.

Kentucky also recognizes the tort of negligent misrepresentation and has adopted the Restatement's standard for negligent misrepresentation claims. *Presnell Constr. Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 582 (Ky. 2004). The Restatement (Second) of Torts § 552 provides, in pertinent part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the

recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977). "We agree that privity is not necessary to maintain a tort action, and, by adopting § 552, we agree that the tort of negligent representation defines an independent duty for which recovery in tort for economic loss is available." *Presnell*, 134 S.W.3d at 582. USAA must show that Imagistics, PBI, and PBCC supplied false information to guide its business transactions and failed to use reasonable care or competence in doing so. Furthermore, USAA must prove that it reasonably relied to its detriment on that false information.

    i. PBCC

PBCC claims that the statements made by Larry Stokely cannot be attributed to it. Paragraph eleven of the Software Lease, entitled "Parties' Relationship," includes the following sentence in bold and capital letters: **"PBCC IS NOT AN AGENT OF VENDOR AND NEITHER VENDOR NOR ANY OF ITS REPRESENTATIVES ARE PBCC'S AGENTS."** The very first paragraph of the lease clarifies that the "words 'we,' 'us,' 'our' and 'PBCC' refer to Lessor, Pitney Bowes Credit Corporation" and the "terms 'Pitney Bowes' and 'Vendor' mean Pitney Bowes Inc."

USAA counters that Stokely presented the Software Lease, which was written on a PBCC form and had PBCC's logo on it, to USAA. According to USAA, this action shows that Stokely had apparent authority from PBCC and made representations that bind PBCC.

8

As to apparent authority, it is settled in Kentucky law that

> the acts or statements of the principal must be looked to
> for the requisite foundation and not to those of the
> agent.  The principal must affirmatively hold the agent
> out to the public as possessing sufficient authority to
> modify the contract, or else voluntarily, and with due
> awareness, permit the agent to act as if he has the
> required authority.  The person claiming reliance on an
> agent's apparent authority must take heed to warnings and
> inconsistent circumstances.

*Savannah Sugar Refinery v. RC Canada Dry*, 593 S.W.2d 880, 883 (Ky. Ct. App. 1979).  USAA should have taken heed of the "warning" in the Software Lease that Stokely, a PBI employee, was not an agent of PBCC.  USAA does not present evidence to show that PBCC made statements or engaged in activity to exercise control over Stokely. Having failed to raise a genuine issue of material fact as to Stokely's apparent authority to bind PBCC for his statements to USAA about the Pitney Bowes System, PBCC is entitled to summary judgment on USAA's fraud claims.

USAA's negligent misrepresentation claims are based on information provided to USAA regarding the reliability of the Pitney Bowes System and the ability of the system to meet the performance requirements of USAA, basically "the same series of misrepresentations identified above in its fraud claim." (USAA's Resp. to PBI's Mot. for Summ. J. 16.)  As USAA has not shown that PBCC or a PBCC agent provided any of that information, summary judgment is appropriate as to those claims as well.

ii.  PBI

9

a.   The  Pitney  Bowes  System  would  produce  a "savings per year" of $279,152.70.

PBI does not dispute that Larry Stokely was its agent.  USAA cannot survive PBI's motion for summary judgment on its fraud claim based on Stokely's statement that the system would produce a "savings per year" of $279,152.70.  This is purely a prediction of future savings and not a statement of fact.  In *Scott v. Farmers State Bank*, 410 S.W.2d 717 (Ky. 1966), the court held that a contractor's statement to a bank on what a subcontractor was expected to earn on a project was not actionable fraud even though the bank relied upon the statement in determining whether to loan money to the subcontractor.  *Id.* at 720.  Stokely's prediction of USAA's savings was just that, a prediction, and expressions of opinions as to future events are not actionable.  *Id.*

b.   The  Printing  System  would  "handle  up  to  a million pages a month" with "unmatched reliability, high productivity and economic cost savings."

USAA cannot survive PBI's motion for summary judgment on its fraud claim based on the statement that the system would "handle up to a million pages a month."  This statement was in a brochure on the DL750 printer that was provided to USAA.  USAA has not presented evidence that the Printing System failed to handle up to a million pages a month.  USAA does not dispute that it used its printers to print over nine million copies in a ten-month period. (Fraley Dep. June 27, 2005 307:2-4.)  USAA's failure to raise a genuine issue as to the falsity of the statement in the brochure

10

leads to summary judgment on this claim.

Furthermore, the statement in the same brochure that the system would operate with "unmatched reliability, high productivity and economic cost savings" is an example of opinion and sales puffery; it will not support a fraud claim. *See McHargue*, 283 S.W.2d at 172.

> c.  The Pitney Bowes System would meet or exceed USAA's requirements for printing and mailing, including specific representations that the recommended printing and copying equipment would perform as required to meet USAA's needs.

USAA cannot survive PBI's motion for summary judgment on its fraud claim based on the statement that the Pitney Bowes System would meet or exceed USAA's requirements or that the printing equipment would meet USAA's needs.

In *Pitney Bowes, Inc. v. Sirkle*, 248 S.W.2d 920 (Ky. 1952), the court explained that "whatever is susceptible of exact knowledge is a matter of fact, while that not susceptible is generally regarded as an expression of opinion." *Id.* at 922. Using that definition, USAA argues that PBI's representation that the software and printers would meet its needs is susceptible to exact knowledge; therefore, PBI's representation was a fact. But the *Sirkle* court's holding does not support USAA's view.  In *Sirkle*, the seller of a tax stamping machine told the buyers that the machine only required one person to operate it when, in fact, the machine worked in a more satisfactory manner when two people

11

operated it.  *Id.*  Whether the machine could be operated by one person is susceptible to exact knowledge; therefore, it was a statement of fact.

Unlike the *Sirkle* case, whether the system would meet USAA's needs or requirements is not susceptible to exact knowledge even though Jeff Fraley and Larry Stokely discussed USAA's plans for the system.  Because PBI's statements were opinions and predictions and were not statements upon which actionable fraud may be based, this fraud claim is subject to dismissal.

> d.  The laser printing process on the Pitney Bowes printer/copiers was a simple "three buttons to run" procedure.

USAA claims that Stokely told its representatives that the software only required "three buttons to run."  When USAA began to use the software to process its documents, its computer crashed.  PBI fashioned a solution to the software problem.  According to USAA, in order to process documents through PBI's software, USAA was required to input as many as 270 mouse clicks.

Factual issues remain on USAA's fraud claim as to this particular statement which preclude summary judgment.  USAA had specific concerns about the labor required to process its documents due to its lack of experience in printing the promotional materials in-house.  The fact that the software operates in a manner that is not as it was represented could very well be material to USAA.  In his deposition, Stokely stated that he told USAA that the PBFirst

software could be a three to four button system to operate. (Stokely Dep. Feb. 22, 2005 106:8-9.)  USAA has presented evidence that in order to process a printing job, its employees were required to input approximately 270 mouse clicks.  Furthermore, lacking experience in running this software and printing its promotional materials in-house, USAA has presented evidence that it reasonably relied upon Stokely's representation that the software was a "three buttons to run" procedure.  USAA's fraud claim based on this representation survives PBI's summary judgment motion.

e.  Negligent Misrepresentation

USAA's claim for negligent misrepresentation based on Stokely's statement that the software was a "three buttons to run" process survives summary judgment because USAA has presented evidence that raises a genuine issue as to whether PBI failed to use reasonable care when it supplied to USAA information about the operation of the software that guided USAA in its business decision to lease the software.

As to USAA's negligent misrepresentation claims based upon the other three statements attributed to PBI, summary judgment is appropriate.  USAA has not shown that PBI provided false information when it provided USAA with a brochure that stated that two DL750 printers could print up to one million pages a month, and the statements that USAA could realize savings of $279,152.70 and that the software and printing systems would meet USAA needs were

expressions of opinion.

PBI claims that the integration clause in the Software Lease precludes USAA's fraud and negligent misrepresentation claims. *See Starr v. Fordham*, 648 N.E.2d 1261, 1268 (Mass. 1995). "(Fraud) in the inducement of or preliminary negotiations to a written contract is not ordinarily merged in the contract . . . to preclude an action for fraud." *Sanford Const. Co. v. S & H Contractors, Inc.*, 443 S.W.2d 227, 232 (Ky. 1969) (quoting 37 Am. Jur. 2d 524, Fraud & Deceit, §§ 387-88). In *Bryant v. Troutman*, 287 S.W.2d 918 (Ky. 1956), the buyers brought suit for damages based on the fraud of the seller which they claimed induced them into buying their home. The court held that "false and fraudulent representations made by one of the parties to induce the other to enter into the contract, are not merged in the contract." *Id.* at 920. "One cannot contract against his fraud." *Id.* at 921. PBI's reliance on the integration clause does not serve to preclude USAA's fraud claim on this statement.

        f.  Contract Language Limiting PBI's Liability

USAA seeks direct and consequential damages on its fraud and negligent misrepresentation claims, including all payments made under the Software Lease and the Printing System Lease in the amount of $149,006.39, payments and other costs and losses since it filed this action, the extra cost incurred for a replacement system, damage to its business, and punitive damages. PBI claims

that per the Software Supply Contract, USAA is precluded from seeking consequential, incidental, or punitive damages on this claim.

Paragraph two of the Software Supply Contract between PBI and USAA includes the following:   **"NO RESPONSIBILITY IS ASSUMED BY PITNEY BOWES FOR ANY DAMAGES INCURRED BY REASON OF THE FAILURE OF THE EQUIPMENT, PROM's OR SOFTWARE TO OPERATE AS INTENDED, INCLUDING INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES."** Paragraph eight of the Software Supply Contract contains the following language:

> **IN NO EVENT SHALL WE BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, EXEMPLARY, OR INCIDENTAL DAMAGES OF ANY KIND WHATSOEVER AND HOWEVER CAUSED, OR FOR ANY LOST PROFITS, SAVINGS, OR REVENUES OF ANY KIND, OR FOR LOST DATA OR DOWNTIME, EVEN IF WE KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.**

To the extent that USAA claims damages representing incidental, consequential, and punitive damages, these were expressly disclaimed by PBI in its limited warranty.  The only damages that the Court finds fall outside of this limitation on liability are the payments made under the Software Lease.

iii.  Imagistics

Imagistics argues that Larry Stokely, a PBI employee, was not its agent; therefore, it should not be bound by any of his representations.  The Court need not determine whether Stokely was Imagistics' agent because USAA's fraud and negligent misrepresentation claims against Imagistics do not survive summary

15

judgment.

Imagistics stated in its motion that it did not supply the software that processed USAA's print jobs; therefore, USAA has no claim against Imagistics for the statement made by Stokely that the software was a "three button system" to operate.  USAA did not present an argument in response.  Imagistics is entitled to summary judgment as to this statement.

Imagistics is entitled to summary judgment on USAA's fraud claim for the final three statements in Count 1 of its complaint for the reasons stated in the Court's discussion of USAA's fraud claim against PBI.

**B.   Breach of Warranty**

   i.   PBCC

In Count V, USAA claims that because the Mailing System failed to perform, PBCC breached express and implied warranties, including the implied warranty of merchantability and implied warranty of fitness for particular purpose.  Under the title "Lease Terms and Conditions" in the finance lease between USAA and PBCC, paragraph ten, entitled "Equipment Warranty Information" states:

> **WE MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, REGARDING ANY MATTER WHATSOEVER, INCLUDING BUT NOT LIMITED TO, THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS CONDITION, ITS MERCHANTABILITY, ITS FITNESS FOR A PARTICULAR PURPOSE, ITS FREEDOM FROM INFRINGEMENT, OR OTHERWISE.  WE LEASE THE EQUIPMENT TO YOU "AS IS," "WHERE IS," AND "WITH ALL FAULTS."**

16

This written disclaimer, which is typed in bold and in all capital letters, is conspicuous and satisfies U.C.C. § 2A-214(2). The disclaimer placed USAA on notice that PBCC was disclaiming all express and implied warranties, including the implied warranty of merchantability and implied warranty of fitness for a particular purpose.[2]

USAA argues that this warranty disclaimer is unconscionable because it would result in a complete loss of all specific warranties it relied upon in entering into the agreement with PBI and PBCC.  This same argument was discounted by the Court when it granted former Defendant, and finance lessor, CIT's motion to dismiss.  *United States Achievement Academy, LLC v. Pitney Bowes*, Civ. 04-135-KSF, slip op. at 3-5 (E.D. Ky. July 23, 2004).  In that opinion, the Court noted: "In a finance lease, 'the finance lessee . . . is relying upon the manufacturer . . . to provide the promised goods and stand by its promises and warranties; the [lessee] does not look to the [lessor] for these. The [lessor] is only as finance lessor and deals largely in paper, rather than goods.'"  *Id.* at 4 (quoting 2 James J. White & Robert S. Summers, Uniform Commercial Code 5 (4th ed. 1995)).

The doctrine of unconscionability exists to prevent oppression and unfair surprise.  The Court decides as a matter of law if a

---

[2] As a matter of law, there are no implied warranties given by a lessor in connection with a finance lease. U.C.C. § 2A-212, 213.

lease contract or any clause thereof was unconscionable at the time the lease was made.  *See* U.C.C. § 2A-108(1).  The doctrine includes both a "procedural" and a "substantive" element.  "The procedural element focuses on oppression, which results from an inequality of bargaining power, and surprise, which involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix form drafted by the party seeking to enforce the disputed terms." *Siemens Credit Corp. v. Newlands*, 905 F. Supp. 757, 764 (N.D. Cal. 1994).  The substantive element focuses on whether the contract is so substantively unreasonable that it should be denied enforcement.  *Id.*  USAA, as a seasoned business entity, had equal bargaining power with respect to PBCC such that the warranty disclaimer clause in the lease could not be considered so one-sided as to be procedurally unconscionable.  Furthermore, the warranty disclaimer is not substantively unconscionable as such disclaimers are typical in finance leases, and the disclaimer included by PBCC is authorized under U.C.C. § 2A-214.

USAA cites to two cases which it claims stand for the proposition that a complete loss of warranties has been held to be unconscionable.  In *Tandy Computer Leasing v. A.T.C. Control Service, Inc.*, 526 N.Y.S.2d 327, 328 (N.Y. Sup. Ct. 1988), the court held that a lessee was presented with a standard form contract and had no "'meaningful choice'" in negotiating the terms.  *Id.*  Additionally, the lessee never signed an agreement with the

18

manufacturer, so any remedy sought pursuant to a breach of warranty claim against the manufacturer was illusory.  *Id.*   In the second case cited by USAA, *First Federal Financial Service, Inc. v. Derrington's Chevron, Inc.*, 602 N.W.2d 144 (Wis. Ct. App. 1999), the court summarizes the main point in the case, a point that distinguishes the case from USAA's:  "Contractual freedom is not furthered when one of the parties is dealing with incomplete information.  That is what happened in this case."  *Id.* at 145. The forum selection clause in a lease signed by the lessees was never explained to them or mentioned by the supplier's salesperson, and they never dealt with the lessor.  The lessees did not read the clause on the back of the lease, and they did not receive a copy of the lease when they signed it.

Unlike the lessee in *Tandy*, USAA did have an agreement with PBI, the supplier of the software and equipment, which included a ninety-day warranty.  Moreover, USAA knew that PBCC was the finance lessor.  In fact, USAA signed a second lease in May because PBCC decided not to finance the printers and only finance the software and equipment.  USAA does not allege any of the facts found in *First Federal*, and its vice president, Jeff Fraley, testified that he reviewed the documents given to him by Larry Stokely in May. (Fraley Dep. 265:19, June 27, 2005.)  Finally, USAA never disputes that the nature of the arrangement that it entered into was a finance lease.  USAA's claim that the warranty clause in PBCC's

lease was unconscionable is without merit, and PBCC is entitled to summary judgment on USAA's claim of breach of warranty.

ii.  PBI

In Count V, USAA contends that PBI breached express and implied warranties, including the warranty of merchantability and of fitness for a particular purpose.  In response, PBI claims that the language in the Software Supply Contract[3] of the Software Lease limited all warranties to ninety (90) days and that USAA's sole remedy was repair or replacement of the software and equipment. Furthermore, PBI points to language in the Supply Contract in which it disclaimed all other express or implied warranties.

USAA does not dispute that it entered into a finance lease with PBI and PBCC on May 6, 2002.  PBI supplied the software and equipment, PBCC was the lessor, and USAA leased the software and equipment.  Any promises made by PBI to PBCC and any warranties provided in connection with the Software Supply Contract extend to USAA to the extent of its interest in the leasehold interest under the finance lease.  U.C.C. § 2A-209(1).  The Official Comment to the UCC provision states that an "exclusion, modification, or limitation of any term of the supply contract or warranty . . . effective against the lessor as the acquiring party under the supply contract, is also effective against the lessee as the

_____

[3] The Software Supply Contract begins on page five of the lease, under the title "Equipment Warranty and Equipment Maintenance and Service Agreement."

20

beneficiary designated under this provision." *Id.*, official cmt.

Under the U.C.C., parties may disclaim any implied warranty of merchantability or any implied warranty of fitness:

> [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention "merchantability," be by a writing, and be conspicuous. Subject to subsection (3), to exclude or modify any implied warranty of fitness the exclusion must be by a writing and be conspicuous. Language to exclude all implied warranties of fitness is sufficient if it is in writing, is conspicuous and states, for example, "There is no warranty that the goods will be fit for a particular purpose."

U.C.C. § 2A-214(2). "Conspicuous," refers to a term that is written so that "a reasonable person against whom it is to operate ought to have noticed it." U.C.C. § 1-201(10).

The six-page agreement between PBI, PBCC, and USAA consists of five sections. On page five, the second paragraph of the Software Supply Contract, entitled "Warranties," contains the following language: "Pitney Bowes warrants the Equipment, PROMS and Software leased by PBCC above (excluding consumable parts and supplies) to be free from defect in material, workmanship or programming for 90 days following delivery." The next line explains that if the Equipment, PROMS or Software fails during the ninety days following delivery, "Pitney Bowes will repair, or at their option, replace any such defective item, at their own expense." Eight lines below this warranty is the following disclaimer:

**THIS IS THE ONLY WARRANTY APPLICABLE TO THE LEASE, THE EQUIPMENT, PROM's AND SOFTWARE, AND IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING**

**ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY. REPAIR OR REPLACEMENT OF THE EQUIPMENT BY PITNEY BOWES IS YOUR SOLE REMEDY FOR BREACH OF WARRANTY. NO RESPONSIBILITY IS ASSUMED BY PITNEY BOWES FOR ANY DAMAGES INCURRED BY REASON OF THE FAILURE OF THE EQUIPMENT, PROM's OR SOFTWARE TO OPERATE AS INTENDED, INCLUDING INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES.**

Typed in bold and in all capital letters, this disclaimer is conspicuous, and PBI adequately put USAA on notice of the disclaimer. *See* U.C.C. § 1-201(10). The language clearly explains that the ninety-day warranty is the only warranty available to USAA and is "**EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY.**" The written disclaimer satisfies § 2A-214 and therefore effectively disclaims any other express warranties or any implied warranties made by PBI.

PBI argues that USAA's sole remedy was "repair or replacement of the equipment" and that limiting USAA's remedy to repair or replacement is allowed under the U.C.C. Under U.C.C. § 2-719, parties may agree to a limitation of remedy:

> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

U.C.C. § 2-719(1).

22

USAA claims that the disclaimer in the Software Supply Contract was unconscionable because it effectively left USAA with no remedy or recourse. USAA contends that its sole remedy, repair or replacement of the equipment, failed its essential purpose. The Court will address each of these arguments in turn.

As noted in the Court's discussion of USAA's claim of breach of warranty against PBCC, to determine whether the disclaimer is unconscionable, the Court examines whether PBI's warranty disclaimer was procedurally and substantively unconscionable. USAA has not presented evidence that bargaining improprieties existed when it was negotiating the contract with PBI. This Court has already found that USAA was a seasoned business entity. Furthermore, this was a lease entered into between corporate parties; it was not a consumer lease. USAA does not claim that it did not review the Software Supply Contract or that it was not given adequate time to do so; in fact, USAA's Jeff Fraley testified that he reviewed the lease. USAA's argument that the disclaimer does not stand out is without merit. The entire lease is only six pages long and the disclaimer itself is printed in capital and bold letters under the heading, **"EQUIPMENT WARRANTY AND EQUIPMENT MAINTENANCE AND SERVICE AGREEMENT."** The disclaimer was clear, conspicuous, and was not "hidden in a prolix form." *Siemens*, 905 F. Supp. at 764.

As to substantive unconscionability, USAA's argument focuses

on how it will suffer harshly if the Court enforces the contract as written.   USAA claims that it experienced software problems immediately upon installation and that PBI's attempts to repair the software rendered the software "unreasonably burdensome" to use. USAA argues that it was stripped of the substantial value of its bargain.

The Court examines whether the clause was unconscionable at the time it was agreed to by the parties.  U.C.C. § 2A-108.  On May 6, 2002, when USAA signed the lease agreement that included the Software Supply Contract, USAA agreed that PBI was disclaiming all warranties except a ninety-day warranty of repair or replacement. USAA's description of what happened after the lease was signed — the PBI software would not print USAA's documents so PBI altered the printing process so that it was very burdensome for USAA to print documents — does not reveal that the warranty disclaimer and the limitation of remedy was unfairly one-sided.  USAA has only shown that it does not like the terms of the warranty not that the warranty disclaimer was commercially unreasonable.  Both USAA and PBI are commercial entities, and USAA was capable of doing business elsewhere if the terms of the contract were unacceptable.

In its second argument, USAA complains that because its sole remedy of repair or replacement of the equipment failed its essential purpose, USAA is left with no remedy.  "Where circumstances cause an exclusive or limited remedy to fail of its

24

essential purpose, remedy may be had as provided in this chapter."
U.C.C. § 2-719(2).  USAA claims that PBI repaired their software
problems by developing a cumbersome "wrap-around" process that took
as many as 270 mouse clicks to complete a print job.  According to
USAA, because the software could never be repaired to be a system
that would only require three mouse clicks to complete, the remedy
provided by PBI failed its essential purpose.

"A limitation of remedy provision fails of its essential
purpose when it deprives a party of the substantial value of its
bargain." *Gooch v. E.I. Du Pont de Nemours & Co.* 40 F. Supp. 2d
863, 870 (W.D. Ky. 1999).  As there are "'relatively few situations
where a remedy can fail of its essential purpose,'" section
2-719(2) has been invoked most often in cases in which "'the
exclusive remedy involves replacement or repair of defective parts,
and the seller because of his negligence in repair or because the
goods are beyond repair, is unable to put the goods in warranted
condition.'" *Rudd Constr. Equipment Co. v. Clark Equipment Co.*, 735
F.2d 974, 981 (6th Cir. 1984) (quoting James J. White & Robert S.
Summers, Uniform Commercial Code § 12-10 (2d. ed. 1980)).  In this
case, USAA complains that although the software supplied by PBI
eventually enabled USAA to print its documents, the software would
only operate if a labor-intensive process was employed by USAA.

PBI argues that the exclusive remedy did not fail its
essential purpose because USAA never took advantage of the ninety-

25

day warranty.  PBI argues that USAA's representatives signed a Customer Acceptance Document after the expiration of the ninety-day warranty and after PBI fashioned a time-consuming and labor-intensive solution to the software problems USAA was experiencing. (Ex. D to PBI's Mot. for Summ. J.)  If the solution was not satisfactory to USAA, it should have invoked its sole remedy of repair or replacement within the ninety-day period.  USAA does not explain how that limited remedy deprived it of a substantial value of its bargain when it agreed that it was satisfied with the PBI software knowing that the printing process was a 270-click process. No genuine issue of material fact exists regarding a breach of the limited warranty.  Therefore, PBI is entitled to summary judgment on this claim.

        iii. Imagistics

    In Count VII, USAA claims that because Imagistics' DL750 printers failed to perform, PBCC breached express and implied warranties, including the implied warranty of merchantability and implied warranty of fitness for particular purpose.

    The Printer Supply Contract between USAA and Imagistics contains the following language:

> THIS GUARANTEE IS THE ONLY GUARANTEE APPLICABLE TO THE PRODUCT AND IS EXPRESSLY IN LIEU OF ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY.  REPAIR OR REPLACEMENT OF THE PRODUCT IS YOUR SOLE AND EXCLUSIVE REMEDY FOR BREACH OF WARRANTY. WE DO NOT ASSUME RESPONSIBILITY FOR ANY DAMAGES YOU MAY INCUR BY REASON OF THE FAILURE OF THE PRODUCT TO OPERATE,

INCLUDING INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES. Imagistics argues that it disclaimed any express or implied warranties in the Printer Supply Contract.

USAA claims that it never received or reviewed the Printer Supply Contract; therefore, it never saw the warranty disclaimers upon which Imagistics now relies.[4]  Imagistics points out that in the lease agreement between CIT and USAA, there is a clause in paragraph eighteen that precludes USAA's argument:  "By signing this Lease, you agree that either (a) you have reviewed, approved, and received, a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights."

At the summary judgment stage, the Court must view the facts in the light most favorable to the non-moving party, USAA.  "A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms."  *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d

---

[4]  USAA refers to Imagistics' employee Roderick Byers' testimony for support.  There are two pages to the document that Imagistics refers to as the "Supply Contract."  Byers testified that CIT and Imagistics would receive a copy of the first page of the Printer Supply Contract — he called this sheet a sales agreement.  (Byers Dep. 94:21-96:21, Mar. 2, 2005.)  Byers testified that he did not recognize the second page of the agreement, which includes the warranty disclaimer, as a part of any other document.

335, 341 (Ky. Ct. App. 2001) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky. Ct. App. 1985)).  USAA claims that it did not receive a copy of the Printer Supply Contract and thus did not have an opportunity to review the warranty disclaimers set forth by Imagistics.  The Court finds that a genuine issue of material fact exists that precludes dismissal of this breach of warranty claim via Imagistics' summary judgment motion.

    **C.   Revocation of Acceptance**

        i.   PBCC

USAA claims that it revoked its acceptance of the software and equipment that was leased to it by PBCC.  PBCC counters that the lease clearly states that the lease is a finance lease and that USAA may not cancel or terminate the lease for any reason (paragraph 2) and that USAA waived its right to reject or revoke acceptance of the Equipment (paragraph 26).  USAA's only argument in response is that PBCC's limitation of remedy failed of its essential purpose.  USAA's reliance on *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 (Tenn. Ct. App. 1972) is inapposite.  In *Moore*, when a car dealer was unable to make "the necessary repairs or parts replacement to give [buyers] that which they purchased — an automobile substantially free of material defects," the court allowed the buyers to rescind.  *Id.* at 229.  Unlike the car dealer in *Moore*, PBCC never warranted the software supplied by PBI and never extended to USAA a limited remedy of

28

repair or replacement.  USAA has failed to offer any reason why the agreement between PBCC and USAA should not be enforced.  Thus, PBCC is entitled to summary judgment on this claim.

ii.  PBI

USAA alleges that it revoked its acceptance of the software and equipment that was supplied to it by PBI.  PBI refers to second paragraph of the Software Supply Contract which limits USAA's remedy to repair or replacement of the software and equipment.  Again, USAA argues that this limitation of remedies failed of its essential purpose.  This argument is identical to the argument raised by USAA in its breach of warranty claim.  The Court rejects this argument for the same reasons.  USAA has not shown that PBI's limited warranty failed of its essential purpose; therefore, the Software Supply Contract provided USAA with a limited remedy and precluded its right to revoke.

iii. Imagistics

USAA makes the same revocation of acceptance claim against Imagistics.  In response, Imagistics argues that under the limited warranty provided in the Printer Supply Contract, USAA's only remedy is repair or replacement of the printers and it may not seek other remedies, such as revocation of acceptance.  Because USAA raised a genuine issue of material fact by stating that it never received or reviewed the Printer Supply Contract, Imagistics is not entitled to summary judgment on this claim.

**D.  Breach of Contract**

    i.   PBCC

USAA has abandoned this claim against PBCC.  (USAA's Resp. to PBI's Mot. for Summ. J. 21.)

    ii.   PBI

In Count VIII, USAA claims that PBI failed to provide USAA with a mailing and printing system that would meet its requirements.  According to USAA, this failure, along with PBI's failure to correct, repair, modify, or replace the Pitney Bowes System represent breaches of the agreement between the parties.

As noted above, the limited remedy in the Software Supply Contract provides that USAA's only remedy is repair or replacement of the equipment.  This limited remedy precludes USAA from seeking the relief it requests.  USAA's argument that this limited remedy failed of its essential purpose and left USAA without any remedy has been addressed in previous sections and was found to be without merit.  USAA has not presented evidence that the limited remedy failed of its essential purpose.  PBI has shown that there is no genuine issue of material fact as to USAA's claim of breach of contract.  Accordingly, PBI is entitled to summary judgment on this claim.

    iii. Imagistics

In Count X, USAA claims that Imagistics failed to provide USAA with printing and copying equipment that would meet its

30

requirements.   USAA argues that Imagistics also breached the agreement between the parties by failing to correct, repair, modify, or replace the equipment.

In response to Imagistics' motion for summary judgment, USAA explains that its breach of contract claim is based on the "Customer Satisfaction Guarantee" in the Printer Supply Contract. The "Customer Satisfaction Guarantee" states:  "The Pitney Bowes Copier Systems Customer Satisfaction Guarantee means you'll never have to worry about the operation, maintenance, supplies or cost of your copier from the date of purchase."  USAA argues that because Imagistics was unable to repair the printers to its satisfaction and replacement was not a viable option, Imagistics breached its contractual duty.  This general promise that USAA will "never have to worry" about its printers cannot provide the basis for USAA's breach of contract claim.   Nothing in the guarantee burdens Imagistics with a contractual duty to provide printers that meet USAA's requirements for printing and copying.  As USAA has failed to raise a genuine issue of material fact as to Imagistics' breach of this agreement, this claim must be dismissed.

## II.  Breach of Duty of Good Faith and Fair Dealing Claim Brought Only Against PBI

USAA has abandoned this claim against PBI.  (USAA's Resp. to PBI's Mot. for Summ. J. 21.)

## III.  PBCC's Counterclaim

PBCC maintains that it is entitled to summary judgment on its counterclaim because under the Software Lease, USAA unconditionally promised to make all fifty-four payments on the lease. PBCC claims that USAA defaulted on the lease when it ceased making payments in February of 2004. Pursuant to paragraph fourteen of the lease, upon default, PBCC may "accelerate and require immediate payment, as liquidated damages, of all . . . sums due under this Lease or due under any Agreements, whether accrued or due in the future." Paragraph fourteen of the lease also provides that "[y]ou [USAA] shall pay all our costs in enforcing our rights against you, including reasonable attorneys fees, and any expenses we incur to take possession, hold, repair and dispose of the Equipment." PBCC asks for all costs, including attorneys fees, in enforcing its rights against USAA.

USAA does not dispute these provisions of the lease but instead argues that PBCC is estopped by its conduct, through its agent Larry Stokely, from recovering any sums from USAA under the lease agreement. As the Court has already determined that USAA has not shown that Stokely acted as PBCC's agent, that argument is without merit. USAA makes no other argument with respect to its liability under the lease. The Court finds that there is no disputed issue of material fact that USAA breached its lease agreement with PBCC and that it is liable to PBCC for the unpaid lease payments totaling $89,041.93 and the costs and attorneys'

32

fees PBCC has incurred in enforcing its rights under the lease.

## IV.   Imagistics' Counterclaim

Imagistics claims that it is entitled to collect its fees under the Equipment Maintenance Agreement between it and USAA.[5] Paragraph ten of that agreement states:

> If you elect to cancel this agreement, early termination charges may apply.  These are equal to the aggregate of all remaining monthly minimum charges for the balance of the then current term of the agreement, plus all billed but unpaid monthly minimum charges and overage charges.

Imagistics contends that USAA has not paid it for maintenance completed from March 1, 2003, to May 31, 2003 — a total charge of $16,539.69.  Imagistics claims that the language of the agreement coupled with the testimony of USAA's Jeff Fraley confirms that there is no genuine issue of material fact as to Imagistics' counterclaim for the unpaid charges.  In his deposition, Fraley agreed that USAA owed Imagistics for maintenance performed through June of 2003.  (Fraley Dep. 273:13-16.)  As to the remaining monthly minimum charges for the balance of the lease, Imagistics refers to the agreement's requirement that USAA pay "the aggregate of all remaining monthly minimum charges for the balance of the then current term of the agreement," which amounts to $119,256.33.

USAA responds by claiming that Imagistics is estopped from

_____

[5] Imagistics does not explicitly state that it is moving for summary judgment on its counterclaim, but its arguments essentially ask for that relief.  Imagistics clearly argues that no genuine issue of material fact exists as to its counterclaim.

33

enforcing and recovering any sums under the maintenance agreement. According to USAA, because Imagistics knew that the printers it supplied to USAA would not satisfy USAA's requirements, equity precludes Imagistics from prevailing on its claims against USAA on the maintenance of those printers.

*Gray v. Jackson Purchase Credit Association*, 691 S.W.2d 904 (1985), sets forth the elements of estoppel:

> (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*Id.* at 906 (citing *Jones v. Travis*, 194 S.W.2d 841 (Ky. 1946)). USAA has simply not presented any evidence that Imagistics engaged in any misrepresentation or concealed material facts from USAA regarding the Equipment Maintenance Agreement. USAA's equitable estoppel argument fails.

USAA also claims that because Imagistics did not satisfactorily repair the printers, a genuine issue of material fact exists on the issue of whether Imagistics performed its obligations under the agreement. In its response, USAA states that "[t]here is substantial evidence that Imagistics did not, and indeed could not, satisfactorily repair the printers." (USAA's Resp. to Imagistics' Mot. for Summ. J. 38.) This statement, however, is not accompanied by any reference to evidence of

34

Imagistics' failure to repair the printers.  USAA's conclusory statement alone does not raise a genuine issue of material fact as to Imagistics' performance on the agreement.  USAA does not make any additional arguments as to its liability for canceling the Equipment Maintenance Agreement.  The Court finds that there is no genuine issue of material fact regarding USAA's liability to Imagistics for its early termination of the Equipment Maintenance Agreement; therefore, Imagistics is entitled to summary judgment on its counterclaim.

CONCLUSION

Accordingly, and for the reasons stated above, **IT IS ORDERED:**

(1) that PBI and PBCC's motion for summary judgment [Record No. 72] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART;**

> (a)  USAA's claim of fraud against PBI based on the statement that the system was a "three buttons to run" process is the only claim that survives PBI and PBCC's motion for summary judgment.
>
> (b)  USAA's claim of damages based on its fraud claim for payments made under the Software Lease is the only damages claim that survives PBI and PBCC's motion for summary judgment.
>
> (c)  Summary judgment is granted in favor of PBCC on its counterclaim against USAA.

35

(2) that Imagistics' motion for summary judgment [Record No. 71] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART**;

     (a)   USAA's claims of breach of warranty and revocation of acceptance are the only claims that survive Imagistics' motion for summary judgment.

     (b)   Summary judgment is granted in favor of Imagistics on its counterclaim against USAA.

This the 18th day of October, 2006.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**

36